UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

BARING INDUSTRIES, INC.,                                   19-CV-2829(JGK)(SN)

                                        Plaintiff,    Honorable John G. Koeltl
                                                      United States District Judge

                  v.

3 BP PROPERTY OWNER LLC,
DADONG CATERING LLC, AND
WESTCHESTER FIRE INSURANCE
COMPANY, DONE RIGHT HOOD & FIRE
SAFETY INC., AA JEDSON COMPANY LLC,

                                        Defendants.
-------------------------------------------------------------x

---

**MEMORANDUM OF LAW OF DEFENDANTS 3 BP PROPERTY OWNER LLC
AND WESTCHESTER FIRE INSURANCE COMPANY IN SUPPORT
OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

---

SILLS CUMMIS & GROSS P.C.
101 Park Avenue, 28th Floor
New York, New York 10178
Telephone: (212) 643-7000

*Attorneys for Defendants*
*3 BP Property Owner LLC and*
*Westchester Fire Insurance Company*

Of Counsel and On the Brief:
    Mitchell D. Haddad, Esq.
    Katherine M. Lieb, Esq.

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

THE SECOND AMENDED COMPLAINT'S ALLEGATIONS ................................ 1

    A.    Background ................................................................................ 1

    B.    Baring's Attempts to Allege Consent ........................................ 3

    C.    The Relief Sought by Baring ..................................................... 5

    D.    Procedural History ..................................................................... 6

ARGUMENT ...................................................................................................... 6

    I.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE *TWOMBLY/IQBAL* PLEADING STANDARD .................................... 6

        A.    Standard of Review ..................................................................... 6

    II.    BARING FAILS TO STATE A CLAIM FOR FORECLOSURE OF A MECHANIC'S LIEN AND FOR JUDGMENT ON THE BOND AS TO WESTCHESTER FIRE ............................................................... 8

    III.    BARING HAS FAILED TO PLEAD CLAIMS FOR UNJUST ENRICHMENT AND QUANTUM MERUIT ...................................... 14

        A.    The Unjust Enrichment Claim Should be Dismissed .............. 15

        B.    The Quantum Meruit Claim Should be Dismissed ................... 17

CONCLUSION .................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*AMA v. United Healthcare Corp.*,
    2007 U.S. Dist. LEXIS 18729 (S.D.N.Y. Mar. 5, 2007) .......................................................15

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937 (2009) ..............................................................................6, 7, 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544, 555 (2007) ..................................................................................................6

*CUnet, LLC v. Quad Partners, LLC*, No. 16-cv-6327 (CM),
    2017 U.S. Dist. LEXIS 36930 (S.D.N.Y. Mar. 7, 2017)  .....................................................18

*De Jesus v. Sears, Roebuck & Co.*,
    87 F.3d 65 (2d Cir. 1996)..................................................................................................7

*Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)...............................................................................15

*Faulkner v. Verizon Communs., Inc.*,
    156 F. Supp. 2d 384 (S.D.N.Y. 2001)................................................................................7

*Hernandez v. City of N.Y.*,
    2019 U.S. Dist. LEXIS 96187 (S.D.N.Y. June 7, 2019)........................................................8

*McNaughton v. de Blasio*,
    2015 U.S. Dist. LEXIS 13352 (S.D.N.Y. Feb. 4, 2015).......................................................8

*Mergers & Acquisition Servs. v. Eli Glob., LLC*,
    No. 1:15-cv-3723-GHW, 2017 U.S. Dist. LEXIS 45028 (S.D.N.Y. Mar. 27,
    2017) .....................................................................................................................14, 17, 18

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
    418 F.3d 168 (2d Cir. 2005)..............................................................................................17

*Mueller v. Michael Janssen Gallery PTE. Ltd.*,
    225 F. Supp. 3d 201 (S.D.N.Y. 2016)...............................................................................15

*Palda v. General Dynamics Corp.*,
    47 F.3d 872 (7th Cir. 1995) ..............................................................................................7

*Prince v. Madison Square Garden*,
    427 F. Supp. 2d 372 (S.D.N.Y. 2006)...............................................................................8

*Rojas v. Cigna Health & Life Ins. Co.*,
  No. 14-CV-6368 (KMK), 2018 U.S. Dist. LEXIS 169726 (S.D.N.Y. Sept. 28,
  2018) ..................................................................................................................................15

*Rosenfeld v. Lench*,
  370 F. Supp. 3d 335 (E.D.N.Y. 2019) ..............................................................................8, 12

*Washington v. Kellwood Co.*,
  2009 U.S. Dist. LEXIS 32565 (S.D.N.Y. Mar. 24, 2009) ......................................................16

*Wolo Mfg. Corp. v. ABC Corp.*,
  349 F. Supp. 3d 176 (E.D.N.Y. 2018) ..................................................................................7

**STATE CASES**

*A&V 425 LLC Contracting Co. v. RFD 55th St. LLC*,
  15 Misc. 3d 196, 830 N.Y.S.2d 637 (Sup. Ct., N.Y. Cty. 2007)  ....................................15, 16

*Church E. Gates & Co. v. Empire City Racing Ass'n*,
  225 N.Y. 142, 121 N.E. 741 (1919) ..................................................................................8, 9

*Creech v. Rufa*,
  101 A.D.3d 1224, 956 N.Y.S.2d 218 (3d Dep't 2012) ............................................................9

*Elliott-Williams Co., Inc. v. Impromptu Gourmet, Inc.*,
  28 A.D.3d 706, 813 N.Y.S.2d 778 (2d Dep't 2006) ..........................................................9, 12

*Feder v. Galiguira*,
  8 N.Y.2d 400, 208 N.Y.S.2d 970, 171 N.E.2d 316 (1960) ....................................................13

*Fulbright & Jaworski, LLP v. Carucci*,
  63 A.D.3d 487, 881 N.Y.S.2d 56 (1st Dep't 2009) ..............................................................17

*Harlem Plumbing Supply Co., Inc. v. Handelsman*,
  40 A.D.2d 768, 337 N.Y.S.2d 329 (1st Dep't 1972) ........................................................13, 14

*J.K. Tobin Constr. Co., Inc. v. David J. Hardy Constr. Co., Inc.*,
  64 A.D. 1206, 883 N.Y.S.2d 681 (4th Dep't 2009) ..........................................................11, 12

*Modern Era Constr., Inc. v. Shore Plaza, LLC*,
  51 A.D.3d 990, 858 N.Y.S.2d 783 (2nd Dep't 2008) ............................................................9

*Park West Management Corp. v. Mitchell*,
  47 N.Y.2d 316, 418 N.Y.S.2d 310, 391 N.E.2d 1288 (1979) ................................................13

*Paul Mock, Inc. v. 118 E 25th St. Realty Co.*,
  87 A.D.2d 756, 448 N.Y.S.2d 693 ..............................................................................12, 13

*Romar Sheet Metal, Inc. v. F.W. Sims, Inc.*,
    8 Misc. 3d 1021(A), 803 N.Y.S.2d 20 (Sup. Ct., N.Y. Co. 2005) ..........................................14

*Spitz v. Brooks*,
    210 A.D. 438, 206 N.Y.S 313 (1st Dep't 1924) .....................................................................14

## STATUTES

New York General Business Law § 756-a (Prompt Payment Act) .................................................5

New York Lien Law § 44(3) ..........................................................................................................13

New York Lien Law § 3 ................................................................................................4, 8, 11, 12

## RULES

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................6, 7, 11

## OTHER AUTHORITIES

2 James Wm. Moore et al., Moore's Federal Practice (3d ed. 1997) .............................................7

Rasch Landlord & Tenant (Fifth Ed. 2018) .................................................................................13

**PRELIMINARY STATEMENT**

The Second Amended Complaint should be dismissed in this mechanic's lien foreclosure action because plaintiff, Baring Industries, Inc. ("Baring"), again fails to plead any facts showing that defendant-owner, 3 BP Property Owner LLC ("3 BP Property"), or defendant-bonding company, Westchester Fire Insurance Company ("Westchester Fire"), hired Baring or engaged in any affirmative conduct that procured the specific work or services that Baring alleged it performed for 3 BP Property's tenant, defendant DaDong Catering LLC ("DaDong").  Instead, the Second Amended Complaint alleges a myriad of confusing and conclusory allegations, many upon "information and belief," that merely parrot a key element of Baring's prima facie case, i.e., that said defendants "consented" to Baring's work, but leaving out one critical fact – how.

Nor does the Second Amended Complaint allege proper claims sounding in unjust enrichment or quantum meruit against 3 BP Property or Westchester Fire, because nowhere does Baring plead how these defendants were "enriched," and Baring admits that its written contract with Dadong -- which DaDong allegedly breached -- concerns the same subject matter of these claims.

**THE SECOND AMENDED COMPLAINT'S ALLEGATIONS**

**A.    Background**

Baring's Second Amended Complaint ("Second Am. Complaint") alleges that 3 BP Property is the owner of 3 Bryant Park, a/k/a 1095 Avenue of the Americas, a/k/a 126-128 West 42nd Street in New York (the "Building").  (Dkt. No. 64; Second Am. Complaint ¶¶ 12, 13.)  The Building is a 41 story commercial office building on the corner of Sixth Avenue and West 42nd Street with an adjacent retail annex unit.  The Second Am. Complaint further alleges that 3 BP Property leased the entire Building to DaDong pursuant to a lease agreement (Second Am.

Complaint ¶¶ 12, 21-23), although in reality Dadong only leased all or portions of various floors of commercial retail space in the retail annex unit for use as a restaurant (the "Leased Premises").

The Second Am. Complaint alleges that, "[p]ursuant to the terms of an agreement entered into by and between Plaintiff and Defendant DaDong, Plaintiff agreed to furnish work, labor, services and equipment to the Subject Premises (the 'Agreement')" for a total amount of $2,147,039.41.  (Second Am. Complaint, ¶¶ 48, 57.)  More specifically, Baring alleges that it "agreed to provide labor, materials and services including project management, coordination and installation of foodservice equipment, including but not limited to ranges, hoods, [and] walk-in refrigerators at the Subject Premises."  (Second Am. Complaint, ¶ 63.)  Baring claims it "undertook to and did fully perform under the Agreement with DaDong," and that "[t]here is presently due and owing to Plaintiff the principal sum of $320,356.94 with interest thereon." (Second Am. Complaint, ¶¶ 49, 51.)

The Second Am. Complaint alleges at ¶ 71 that, on February 15, 2019, Baring filed a Notice Under Mechanic's Lien in the Office of the Clerk of the County of New York against the Building in the amount that was purportedly unpaid by DaDong, $320,356.94 (the "Mechanic's Lien").  It further makes various allegations regarding the contents of the Mechanic's Lien, the docketing of the lien, and the service of the lien.  (Second Am. Complaint, ¶¶ 71-77.)

The Second Am. Complaint alleges that 3 BP Property and Westchester Fire (collectively, "Defendants") "bound themselves, jointly and severally, under Surety Bond No. K15301971, in the aggregate penal sum of $352,392.63 (the 'Bond') in order to discharge [the Mechanic's Lien] against the Subject Premises to secure Plaintiff's entitlement to be paid for

services performed by Plaintiff at a project known generally as the Subject Premises." (Second

Am. Complaint, ¶ 44.)

     **B.**     **Baring's Attempts to Allege Consent**

     Baring's initial Complaint lacked any allegation whatsoever regarding 3 BP Property's

alleged "consent" to the work it may have performed for Dadong at the Leased Premises. (Dkt.

No. 1.) After 3 BP Property's counsel made Baring's counsel aware of this fact, Baring sought

and was granted permission by this Court to file an Amended Complaint. Baring's First

Amended Complaint contained four conclusory allegations regarding "consent," all alleged on

"information and belief" and all devoid of any facts on which Baring's "information and belief"

was based. (Dkt. No. 45.)

     Baring's Second Am. Complaint now adds several additional allegations regarding 3 BP

Property's purported "consent" to the work it allegedly performed for DaDong, many of which

again are made on "information and belief." The Second Am. Complaint's "consent" allegations

are contained in ¶¶ 24-36, 39, and state in relevant part, as follows:

> 24. Upon information and belief, as consideration for the execution
> of the lease between Defendant Owner and Defendant Dadong,
> Defendant Owner required Defendant Dadong to cause
> construction, renovations and/or improvements to be performed in
> the Subject Premises, occupied by Defendant Dadong.
>
> 25. Defendant Owner was an affirmative factor in procuring the
> work, labor, services and equipment provided by Plaintiff in the
> Subject Premises.
>
> 26. Defendant Owner had possession and control of the Subject
> Premises and assented to the furnishing of work, labor, services
> and equipment by Plaintiff to the Subject Premises in the
> expectation that Defendant Owner would, directly and indirectly,
> reap the benefit of the furnishing of work, labor, services and
> equipment by Plaintiff to the Subject Premises.

27. Defendant Owner consented to the performance of construction, renovations, improvements and the furnishing of work, labor, services and equipment by Plaintiff to the Subject Premises, occupied by or to be occupied by Defendant Owner's tenant, Defendant Dadong.

28. Defendant Owner knew and consented that Defendant Dadong would be engaging the services of contractors, subcontractors, suppliers and materialmen to perform work inside of the Subject Premises as required of Defendant Dadong by Defendant Owner.

29. Upon information and belief, Defendant Owner knew, permitted and consented to Defendant Dadong hiring Plaintiff to cause the performance of construction, renovations, improvements and the furnishing of work, labor, services and equipment by Plaintiff to the Subject Premises, to be occupied by Defendant Dadong.

30. Upon information and belief, Defendant Owner knew that Defendant Dadong would be required to cause the performance of construction, renovations, improvements and the furnishing of work, labor, services and equipment to the Subject Premises and cause construction, renovations and/or improvements to be performed in the Subject Premises pursuant to the terms of the lease agreement by and between Defendant Owner and Defendant Dadong.

31. Upon information and belief, Defendant Owner had knowledge of, and consented to, Defendant Dadong's request that Plaintiff perform work and provide labor, service, materials and equipment for the Subject Premises.

32. Defendant Owner consented to the improvements made to the Subject Premises by Plaintiff in accordance with New York Lien Law §3.

33. Upon information and belief, consent of Defendant Owner was inferred from the terms of the lease agreement between Defendant Owner and Defendant Dadong.

34. Upon information and belief, consent of Defendant Owner did not have to expressly or directly consent to the improvements made by Plaintiff to the Subject Owner.

35. Upon information and belief, the language of the lease agreement between Defendant Owner and Defendant Dadong, expressly authorized Defendant Dadong to undertake to make or

4

cause improvements by Plaintiff and other contractors to the
Subject Premises.

36. Upon information and belief, the terms of the lease agreement
between Defendant Owner and Defendant Dadong are sufficient to
establish Defendant Owner's consent under New York Lien Law
§3.

…..

39. By execution of a lease with Defendant Dadong, Defendant
Owner had knowledge of, and consented to, the use and
incorporation of labor, services, materials and equipment in the
Subject Premises furnished and installed by Plaintiff.

(Second Am. Complaint, ¶¶ 24-36, 39.)  Only nine of these fourteen paragraphs concern Baring

(¶¶ 25-27, 29, 31-32, 34-35, 39).

    **C.**    <u>**The Relief Sought by Baring**</u>

The Second Am. Complaint asserts six claims for relief.  The First Claim for Relief is

against Dadong and Westchester Fire – *not* 3 BP Property – to foreclose the Mechanic's Lien and

for judgment on the Bond posted by Westchester Fire to secure any judgment on the lien that

Baring may obtain.  (Second Am. Complaint ¶¶ 46-85.)  The Third and Fourth Claims for Relief

are against Dadong, 3 BP Property, and Westchester Fire seeking damages based on theories

sounding in unjust enrichment and quantum meruit, respectively.  (Second Am. Complaint ¶¶

91-120.)

The remaining causes of action (Second, Fifth and Sixth) are only against Dadong for

breach of contract (Second Am. Complaint, Second Claim for Relief ¶¶ 86-90); account stated

(Second Am. Complaint, Fifth Claim for Relief ¶¶ 121-125); and violation of New York General

Business Law § 756-a (Prompt Payment Act) (Second Am. Complaint, Sixth Claim for Relief ¶¶

126-134.)

**D.     Procedural History**

Baring filed its original Complaint on March 29, 2019.  (Dkt. No. 1.)  Baring requested

leave to file an Amended Complaint to add Westchester Fire as a defendant on June 12, 2019,

which request was granted.  (Dkt. Nos. 35, 36.)  Baring filed its First Amended Complaint on

July 15, 2019.  (Dkt. No. 45.)  On August 5, 2019, Defendants filed a request for a pre-motion

conference to address their proposed motion to dismiss the First Amended Complaint.  (Dkt. No.

51.)  The Court granted the request and discussed the proposed motion at the parties' initial

pretrial/pre-motion conference on September 4, 2019.  In response, the Court permitted Baring to

amend its First Amended Complaint by September 27, 2019, and granted Defendants until

October 30, 2019 to move or answer.  (Dkt. No. 56.)[1]

## ARGUMENT

**I.      THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE
         *TWOMBLY/IQBAL* PLEADING STANDARD**

**A.     Standard of Review**

The standard under Rule 12(b)(6) on a motion to dismiss is set forth by the Supreme

Court in *Bell Atlantic Corp. v. Twombly*: "a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do[.]"  550 U.S. 544, 555 (2007) (citations omitted).

Two years later, in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), the Court reaffirmed that the

---

[1] At the conference on September 4, 2019, the Court indicated that 3 BP Property and

Westchester Fire need not file a pre-motion conference request in order to move against the

Second Am. Complaint.

pleading rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation:"

> To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to "state a claim to relief that is
> plausible on its face."  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged.  The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that a
> defendant has acted unlawfully.  Where a complaint pleads facts
> that are "merely consistent with" a defendant's liability, it "stops
> short of the line between possibility and plausibility of 'entitlement
> to relief.'"

*Id*. at 1937, 1949 (citations omitted).

Accordingly, "[a] complaint which consists of conclusory allegations unsupported by

factual assertions fails even the liberal standard of Rule 12(b)(6)." *De Jesus v. Sears, Roebuck &

Co.*, 87 F.3d 65, 70 (2d Cir. 1996) (*quoting Palda v. General Dynamics Corp.*, 47 F.3d 872, 875

(7th Cir. 1995).  Thus, "'conclusory allegations or legal conclusions masquerading as factual

conclusions will not suffice to prevent a motion to dismiss.'"  *Faulkner v. Verizon Communs.,

Inc.*, 156 F. Supp. 2d 384, 391 (S.D.N.Y. 2001) (quoting 2 James Wm. Moore et al., Moore's

Federal Practice §12.34(1)(b) (3d ed. 1997)).  "Allegations that are so conclusory that they fail to

give notice of the basic events and circumstances of which the plaintiff complains, are

insufficient as a matter of law."  *Id*. at 391.

Although the court must accept all factual allegations in the complaint as true, this tenet

"'is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.'"  *Wolo Mfg. Corp. v. ABC Corp.*, 349

F. Supp. 3d 176, 200 (E.D.N.Y. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"'While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations.'"  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  "'In keeping with these principles a

court considering a motion to dismiss can choose to begin by identifying pleadings that, because

they are no more than conclusions, are not entitled to the assumption of truth.'"  *Id.* (quoting

*Iqbal*, 556 U.S. at 679).

While allegations may be made on information and belief, such allegations must be

"accompanied by a statement of the facts upon which the belief is founded."  *See McNaughton v.*

*de Blasio*, 2015 U.S. Dist. LEXIS 13352, at \*20 (S.D.N.Y. Feb. 4, 2015) (*quoting Prince v.*

*Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)); *see also Hernandez v. City*

*of N.Y.*, 2019 U.S. Dist. LEXIS 96187, at \*17 (S.D.N.Y. June 7, 2019) (quoting *Prince* and

dismissing claim where plaintiff failed to provide a "statement of the facts upon which the belief

is founded.").  Thus, without additional factual allegations, conclusory statements do not "cross

the line from conceivable to plausible."  *Rosenfeld v. Lench*, 370 F. Supp. 3d 335, 348 (E.D.N.Y.

2019) (quoting *Twombly*, 550 U.S. at 570).

As detailed below, Baring's allegations rest on legal conclusions and fail to provide an

adequate factual basis from which its claims can be established.  Accordingly, the First, Third,

and Fourth causes of action should be dismissed as to 3 BP Property and Westchester Fire.

## II.   BARING FAILS TO STATE A CLAIM FOR FORECLOSURE OF A MECHANIC'S LIEN AND FOR JUDGMENT ON THE BOND AS TO WESTCHESTER FIRE

To assert a valid mechanic's lien against real property, the lienor must establish that the

contractor "who performs labor or furnishes materials for the improvement of real property" was

done "with the consent or at the request of the owner thereof, or of his agent, contractor or

subcontractor . . ."  N.Y. Lien Law § 3.  *See Church E. Gates & Co. v. Empire City Racing Ass'n*,

225 N.Y. 142, 148, 121 N.E. 741, 742 (1919) ("Proof of the consent or request of the appellant

as the owner of the real property in question, to the performance of labor and furnishing of materials for the improvement thereof, is essential to sustain the several liens."). The owner's "consent must be shown by some affirmative act, and not merely by the owner's acquiescence or awareness." *Creech v. Rufa*, 101 A.D.3d 1224, 1225, 956 N.Y.S.2d 218, 220 (3d Dep't 2012); *Modern Era Constr., Inc. v. Shore Plaza, LLC*, , 991, 858 N.Y.S.2d 783, 784 (2nd Dep't 2008) ("The consent required by the Lien Law is not mere acquiescence and benefit, but some affirmative act or course of conduct establishing confirmation."). Thus, "[t]o sustain the lien, the owner must either be an affirmative factor in procuring the improvement to be made, or having possession and control of the premises assent to the improvement in the expectation that he [or she] will reap the benefit of it." *Elliott-Williams Co., Inc. v. Impromptu Gourmet, Inc*., 28 A.D.3d 706, 707, 813 N.Y.S.2d 778, 779 (2d Dep't 2006) (internal citations and quotation marks omitted).

Baring has had now three opportunities to properly plead <u>facts</u> demonstrating the element of "consent." Tellingly, none of Baring's three complaints have made a single factual allegation sufficient to establish that 3 BP Property engaged in affirmative conduct or actions with respect to Baring's specific work and services it purportedly performed for Dadong, and which would legally satisfy the "consent" element of Baring's <u>prima facie</u> case. As noted above, Baring's original Complaint contained no allegation whatsoever as to 3 BP Property's purported "consent."

After 3 BP Property's counsel advised Baring's counsel of the original Complaint's defects, including Baring's failure even to plead consent, Baring attempted to remedy the defect by adding several conclusory "consent" allegations in its First Amended Complaint. However, all of these allegations were made on "information and belief," and none provide any specific

detail or factual support as to how and in what manner 3 BP Property engaged in any affirmative act for the purposes of the "consent" element of Baring's lien foreclosure claim.  Indeed, they merely alleged boilerplate and conclusory language that 3 BP Property "consented" to its work. (*See, e.g.*, Dkt. No. 45, ¶¶ 14-17.)

3 BP Property again pointed out Baring's pleading deficiencies in its request for a pre-motion conference for leave to file a motion to dismiss the First Amended Complaint.  (Dkt. No. 51.)  And again, this Court granted Baring leave to file another complaint – which it did via the Second Am. Complaint and which again fails to allege facts to establish a basic element of its mechanic's lien cause of action.  Like its predecessor, the Second Am. Complaint makes a series of vague and conclusory allegations as to 3 BP Property's alleged involvement in and consent to the work Baring allegedly performed for DaDong.  But again, Baring fails to provide any specific factual allegations to support these conclusions.

More specifically, paragraphs 25, 26, 27, 29, 31, 34 and 35 of the Second Am. Complaint allege as follows:

> 25. Defendant Owner was an affirmative factor in procuring the work, labor, services and equipment provided by Plaintiff in the Subject Premises.
>
> 26. Defendant Owner had possession and control of the Subject Premises and assented to the furnishing of work, labor, services and equipment by Plaintiff to the Subject Premises in the expectation that Defendant Owner would, directly and indirectly, reap the benefit of the furnishing of work, labor, services and equipment by Plaintiff to the Subject Premises.
>
> 27. Defendant Owner consented to the performance of construction, renovations, improvements and the furnishing of work, labor, services and equipment by Plaintiff to the Subject Premises, occupied by or to be occupied by Defendant Owner's tenant, Defendant Dadong.
>
> . . . .

10

29. Upon information and belief, Defendant Owner knew, permitted and consented to Defendant Dadong hiring Plaintiff to cause the performance of construction, renovations, improvements and the furnishing of work, labor, services and equipment by Plaintiff to the Subject Premises, to be occupied by Defendant Dadong.

. . . .

31. Upon information and belief, Defendant Owner had knowledge of, and consented to, Defendant Dadong's request that Plaintiff perform work and provide labor, service, materials and equipment for the Subject Premises.

. . . .

34. Upon information and belief, consent of Defendant Owner did not have to expressly or directly consent to the improvements made by Plaintiff to the Subject Owner.

35. Upon information and belief, the language of the lease agreement between Defendant Owner and Defendant Dadong, expressly authorized Defendant Dadong to undertake to make or cause improvements by Plaintiff and other contractors to the Subject Premises.

(Second Am. Complaint, ¶¶ 25, 26, 27, 29, 31, 34 and 35.)

Baring's jumbled, rambling and inconsistent allegations regarding 3 BP Property's alleged consent are insufficient to satisfy Rule 12(b)(6). Baring has not alleged any specific factual basis from which consent can be found or inferred. For example, Baring does not allege that 3 BP Property hired Baring, was in privity with Baring, paid Baring, supervised Baring, inspected Baring's work, had any direct dealings with Baring, or engaged in any affirmative conduct whatsoever regarding Baring and its work for Dadong. Where Baring does attempt to fill these gaps, it does so with vague, conclusory language, suggesting that 3 BP Property was "an affirmative factor in procuring the work" or that 3 BP Property "assented" to the work. But the Second Am. Complaint is devoid of any specific conduct engaged in by 3 BP Property – the

11

how.  *See Rosenfeld v. Lench*, 370 F. Supp. 3d at 348 (although plaintiff alleges "upon information and belief" that a group of defendants disclosed the contents of her communications to others resulting in media coverage and gossip that caused damage, dismissing a claim under the Electronics Communications and Privacy Act where plaintiff could not point to a single example of that purported disclosure).

In its response to Defendants' pre-motion conference letter request, Baring tried to supplement the First Amended Complaint's allegations by arguing that "consent [for purposes of Lien Law § 3] may be inferred from the terms of the lease and the conduct of the owner," citing *J.K. Tobin Constr. Co., Inc. v. David J. Hardy Constr. Co., Inc.*, 64 A.D. 1206, 1208, 883 N.Y.S.2d 681 (4th Dep't 2009).  However, now on its third pleading attempt, Baring does not cite or refer to any specific lease provision in which 3 BP Property specifically consented to the work performed by Baring.  Nor does the Second Am. Complaint even state the factual basis for Baring's assumption that DaDong's lease contains such a provision.  And, as noted above, Second Am. Complaint contains no specific factual allegations about affirmative conduct by 3 BP Property from which such consent to the work can be inferred.

Baring has woefully failed to allege facts establishing that 3 BP Property was either "an affirmative factor in procuring the improvement to be made, or having possession and control of the premises assent to the improvement in the expectation that he [or she] will reap the benefit of it."  *Elliott-Williams Co., Inc.*, 28 A.D.3d at 707, 813 N.Y.S.2d at 779 (internal citations and quotation marks omitted).  Thus, a landlord was found not liable for a mechanic's lien when:

> [T]he lienor never dealt with the owner with respect to these improvements; all the transactions relating to the improvements occurred between the lienor and the tenant in possession; the credit accorded by the lienor was to the tenant and not to the owner; and the tenant in essence assured the owner that the improvements to be affected were at the tenant's expense.

*Paul Mock, Inc. v. 118 E 25th St. Realty Co.,* 87 A.D.2d 756, 448 N.Y.S.2d 693, 694 (1st Dep't 1982).

While the Second Am. Complaint tries to satisfy the consent requirement by conclusorily alleging that 3 BP Property has "possession and control" over the Leased Premises, Baring's own pleading contradicts this allegation at ¶¶ 22-24, 27 and 29, by admitting that Dadong leased the Leased Premises from 3 BP Property and that DaDong was in actual occupancy of that space. Moreover, it is well-settled that a lease is a conveyance of an interest in real property by which the lessor (3 BP Property) yields up to the lessee (DaDong) exclusive possession of the space for a specific term. *See Park West Management Corp. v. Mitchell*, 47 N.Y.2d 316, 322-23, 418 N.Y.S.2d 310, 313, 391 N.E.2d 1288, 1291 (1979); *Feder v. Galiguira*, 8 N.Y.2d 400, 404, 208 N.Y.S.2d 970, 972-73, 171 N.E.2d 316, 318 (1960) ("It is the transfer of absolute control and possession of property at an agreed rental which differentiates a lease from other arrangements dealing with property rights."); Rasch Landlord & Tenant, §§ 1.2, 4.1 (Fifth Ed. 2018).  Thus, by definition, 3 BP Property does not have "possession and control" over DaDong's Leased Premises as the Second Am. Complaint conclusorily alleges.

Given Baring's multiple failed attempts to plead any facts that could even arguably satisfy the requisite element of consent, the Second Am. Complaint fails to plead a cause of action to foreclose the Mechanic's Lien.  Accordingly, the First Cause of Action must be dismissed with prejudice. [2]

---

[2] Additionally, the failure to join 3 BP Property to this claim renders it defective as a matter of law.  *See* N.Y. Lien Law §44(3), providing that "all persons appearing by the records on the office of the counter clerk or register to be owners of such real property or any part thereof" are necessary parties to mechanic's lien foreclosure claim.  *See Harlem Plumbing Supply Co., Inc. v.*

### III.    BARING HAS FAILED TO PLEAD CLAIMS FOR UNJUST ENRICHMENT AND QUANTUM MERUIT

In their request for a pre-motion conference for leave to dismiss the First Amended Complaint, Defendants also pointed out the fatal flaws in Baring's prior pleadings' unjust enrichment and quantum meruit claims, including the lack of any factual specifics as to Defendants' purported "enrichment" and Baring's impermissible attempt to recover for the exact same services covered by its express agreement with DaDong.  Baring's Second Am. Complaint merely repleads these same claims with these same these flaws, and thus, they must also be dismissed as to Defendants.[3]

---

*Handelsman*, 40 A.D.2d 768, 768, 337 N.Y.S.2d 329, 330 (1st Dep't 1972) ("Where, as here, the lienor has elected to proceed in equity to enforce its lien, both sections envision the establishment of the validity of such lien before further rights accrue. Under such circumstances, the owner of the property is a necessary party defendant . . . ."); *Spitz v. Brooks*, 210 A.D. 438, 206 N.Y.S 313 (1st Dep't 1924) (a judgment against a bonding company which had bonded a lien for the owner of real property was improper where the owner had not been made a party to the action); *Romar Sheet Metal, Inc. v. F.W. Sims, Inc.*, 8 Misc. 3d 1021(A), 1021A, 803 N.Y.S.2d 20, 20 (Sup. Ct., N.Y. Co. 2005) ("Thus NJTC, as owner of the property upon which the lien is filed, must remain a party to the action.").

[3] Although discussed separately below, "[u]nder New York Law, quantum meruit and unjust enrichment can be analyzed together as one quasi-contract claim."  *Mergers & Acquisition Servs. v. Eli Glob., LLC*, No. 1:15-cv-3723-GHW, 2017 U.S. Dist. LEXIS 45028, at *46 (S.D.N.Y. Mar. 27, 2017).

A.      **The Unjust Enrichment Claim Should be Dismissed**

To prevail on a claim for unjust enrichment in New York, a plaintiff must establish "(1) that the defendant was enriched; (2) that the enrichment was at the plaintiff's expense; and (3) that the circumstances are such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Ellington Credit Fund, LTD. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 202 (S.D.N.Y. 2011). "[W]here the validity of a contract that governs the subject matter at issue is not in dispute, and in fact the claimant alleges breach of that contract, the claimant cannot plead unjust enrichment in the alternative under New York law." *Rojas v. Cigna Health & Life Ins. Co.*, No. 14-CV-6368 (KMK), 2018 U.S. Dist. LEXIS 169726, at *32 (S.D.N.Y. Sept. 28, 2018).

Here, the existence of the written agreement between DaDong and Baring alone precludes Baring's recovery based on unjust enrichment. Although "New York law on this question is not entirely settled," "the trend of both the New York state courts and the courts within this district [holds] that, under New York law, a claim for unjust enrichment may be barred by a contract governing the subject matter of the dispute even if one of the parties to the lawsuit is not a party to the contract." *AMA v. United Healthcare Corp.*, 2007 U.S. Dist. LEXIS 18729, at *33, 36 (S.D.N.Y. Mar. 5, 2007); *see also Mueller v. Michael Janssen Gallery PTE. Ltd.*, 225 F. Supp. 3d 201, 207 (S.D.N.Y. 2016) ("Numerous decisions applying New York law have held that an unjust enrichment claim is barred if there is a valid contract governing the subject matter of the dispute, even if one of the parties to the claim is not a party to that contract.") (internal citations and quotation marks omitted); *A&V 425 LLC Contracting Co. v. RFD 55th St. LLC*, 15 Misc. 3d 196, 206-07, 830 N.Y.S.2d 637, 645 (Sup. Ct., N.Y. Cty. 2007) ("This prohibition against quasi-contractual claims in the face of a written contract applies not

only to the parties that are in privity of contract, but also to noncontracting parties as well . . . . This is especially true where, as here, a subcontractor has attempted to sue an owner when privity does not exist.").

Baring's and DaDong's express written agreement relates to and covers the identical subject matter of the unjust enrichment claim – the provision of work, labor, and services by Baring to DaDong, thereby precluding a separate unjust enrichment claim as a matter of New York law.

Even if the Baring-DaDong agreement did not preclude Baring's assertion of an unjust enrichment claim against Defendants (it does), Baring again fails to provide any factual details as to these Defendants' purported "enrichment."  *See Washington v. Kellwood Co*., 2009 U.S. Dist. LEXIS 32565, at *32 (S.D.N.Y. Mar. 24, 2009) (dismissing unjust enrichment claim where plaintiffs do not explain "Defendant was enriched, how the alleged enrichment came at Plaintiffs' expense, or why this alleged enrichment was inequitable").  At most, the Second Am. Complaint can be said to allege that work, labor, and services were provided to DaDong and that equipment, supplies and materials were installed to DaDong's Leased Premises for use in its restaurant.  The Second Am. Complaint provides no factual allegation showing how and in what manner 3 BP Property, as owner, would stand to gain anything from Baring's provision and installation of restaurant equipment for its tenant.

Baring's allegations of any purported "enrichment" are particularly egregious as to Westchester Fire.  (Second Am. Complaint, ¶ 108.)  Baring does not allege that Westchester Fire had any direct or indirect involvement with Baring, DaDong, the Leased Premises or the Building.  The most that Baring has alleged against Westchester Fire is that it issued the bond at 3 BP Property's request to discharge the lien of the Mechanic's Lien from the Building.  Baring

has alleged no facts showing that Westchester Fire ever stood to gain anything as a result of its alleged work for DaDong in the Leased Premises, such that the claim must be dismissed.

### B.     The Quantum Meruit Claim Should be Dismissed

To state a cause of action for quantum meruit, a "plaintiff must allege (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Fulbright & Jaworski, LLP v. Carucci*, 63 A.D.3d 487, 488-89, 881 N.Y.S.2d 56, 58 (1st Dep't 2009).

Here, Baring has alleged that its work at the Leased Premises was performed at the "express and/or implied request" of Dadong.  (Second Am. Complaint ¶112).  Baring then seeks to assert this claim against 3 BP Property based solely on the conclusory allegation that its work was performed for DaDong at 3 BP Property's "implied request" (Second Am. Complaint ¶113), without alleging any facts showing how and in what manner such request can be "implied." Worse, Baring asserts no allegations against Westchester Fire, but nevertheless seeks to hold it liable on this claim.  (Second Am. Complaint ¶119.)  Baring has not stated a viable quantum meruit claim against Defendants due to its failure to allege any facts showing that Baring performed work for them, which they accepted.

Further, "New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *Mergers & Acquisition Servs.,* 2017 U.S. Dist. LEXIS 45028, at *48 ("The law states that a contract governing a particular subject matter—not necessarily as between the same parties—precludes quasi-contract claims; a person who is not a party to the

agreement may be shielded by that bar."); *CUnet, LLC v. Quad Partners, LLC*, No. 16-cv-6327 (CM), 2017 U.S. Dist. LEXIS 36930, at *20 (S.D.N.Y. Mar. 7, 2017) ("Notably, the Agreement bars Plaintiff's quasi-contractual claims regardless of whether Defendant is a party to the Agreement.")

Here, Baring impermissibly seeks quasi-contractual recovery for the exact same services as the subject matter of its express written agreement with DaDong.  As such, the claim should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Am. Complaint, with prejudice, should be granted, and the Court should grant Defendants such other and further relief which it deems just and proper.

Dated: New York, New York
      October 30, 2019

          Respectfully submitted,

          SILLS CUMMIS & GROSS P.C.
          101 Park Avenue, 28th Floor
          New York, New York 10178
          (212) 643-7000

          By: s/ Mitchell D. Haddad
             MITCHELL D. HADDAD
             KATHERINE M. LIEB

          *Attorneys for Defendants*
          *3 BP Property Owner LLC and Westchester*
          *Fire Insurance Company LLC*

## CERTIFICATE OF COMPLIANCE

Pursuant to the Individual Practices of the Honorable John G. Koeltl, I hereby certify that the foregoing Memorandum of Law of Defendants 3 BP Property Owner LLC and Westchester Fire Insurance Company in Support of Their Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Brief") contains 5,335 words, exclusive of the cover page, the herein certificate, table of contents, and table of authorities.  I further certify that the foregoing Brief is otherwise compliant with the Individual Practices of the Honorable John G. Koeltl.

Dated: October 30, 2019
         New York, New York

SILLS CUMMIS & GROSS, P.C.

By:      s/ Mitchell D. Haddad
          MITCHELL D. HADDAD
101 Park Avenue, 28th Floor
New York, New York 10178
(212) 643-7000

*Attorneys for Defendants*
*3 BP Property Owner LLC and Westchester*
*Fire Insurance Company LLC*