UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BARING INDUSTRIES, INC.,

                          Plaintiff,                    19-cv-2829 (JGK)

         - against -                                    MEMORANDUM OPINION AND
                                                        ORDER
3 BP PROPERTY OWNER LLC, ET AL.,

                          Defendants.

JOHN G. KOELTL, District Judge:

        The plaintiff, Baring Industries, Inc. ("Baring"), brought
this action against 3 BP Property Owner LLC ("3 BP"), Dadong
Catering LLC ("DaDong"), Westchester Fire Insurance Company
("Westchester"), and other defendants, seeking among other
relief to foreclose on a mechanics lien (the "Lien") against 3
Bryant Park a/k/a 1095 Avenue of the Americas a/k/a 126-128 West
42nd Street in Manhattan, New York (the "Property"). Baring, a
provider of food service equipment, had originally sold a
substantial amount of such equipment to DaDong. DaDong failed to
pay $320,356.94 of the amount owed and eventually went bankrupt.
Baring filed the Lien for the outstanding balance, which should
have been limited under the New York Lien Law to the permanent
improvements to the Property but in fact covered goods that were
plainly not permanent improvements, like kitchen equipment on
wheels. 3 BP brought counterclaims for willful exaggeration of
the Lien, wrongful filing of the Lien, and injury to property.

1

In August 2021, 3 BP and Westchester moved for summary judgment dismissing Baring's claims seeking foreclosure on the Lien and judgment on the bond that discharged the Lien (the "Bond"). 3 BP and Westchester also moved for summary judgment granting 3 BP's counterclaim for willful exaggeration of the Lien and sought a declaration that the Lien is void and an award of damages to 3 BP. Baring cross-moved for summary judgment, seeking foreclosure on the Lien and judgment on the Bond. Baring also sought dismissal of 3 BP's counterclaims.

In an Opinion and Order dated January 15, 2022, this Court denied Baring's motion for summary judgment and granted the motion for summary judgment by 3 BP and Westchester. Baring Indus., Inc. v. 3 BP Prop. Owner LLC, 580 F. Supp. 3d 41 (S.D.N.Y. 2022) (the "Summary Judgment Order"). In the Summary Judgment Order, the Court concluded that Baring willfully exaggerated the Lien by its entire amount, in violation of New York Lien Law § 39. Id. at 48-52. The Court awarded damages to 3 BP "equal to the value of the Lien, $320,356.94." Id. at 55. Pursuant to Section 39-a, the Court also awarded 3 BP "the amount of any premium for a bond given to obtain the discharge of the [Lien] or the interest on any money deposited for the purpose of discharging the [Lien] and reasonable attorney's fees for services in securing the discharge of the [Lien]." Id. (quoting N.Y. Lien Law § 39-a). The Court afforded 3 BP leave to

file a supplemental motion for summary judgment for these additional damages. Id. at 57. 3 BP now moves for attorney's fees and costs totaling $516,406.15.[1]

For the following reasons, 3 BP's supplemental motion for summary judgment for attorney's fees and costs is **granted**.

### I.

The Court assumes familiarity with the Summary Judgment Order, which discusses the facts of this litigation in detail. See id. at 44-47. The following facts, taken from the Summary Judgment Order and the parties' submissions, are undisputed unless otherwise noted.

### A.

On March 29, 2019, Baring filed its six-count original complaint. See ECF No. 1. The original complaint named 3 BP as a defendant but did not assert any causes of action against it. On July 15, 2019, Baring amended its complaint, adding Westchester as a defendant and asserting causes of action against 3 BP and Westchester for foreclosure of the Lien, unjust enrichment, and quantum meruit. See ECF No. 45. On September 27, 2019, Baring filed a second amended complaint, which included new allegations that the food service equipment Baring sold to DaDong

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

constituted "permanent improvements" to the Property and were
properly subject to a mechanic's lien under the New York Lien
Law. See ECF No. 64 ¶¶ 35-38. 3 BP and Westchester moved to
dismiss Baring's claims against them. In a bench opinion dated
July 13, 2020, the Court granted in part and denied in part the
motion to dismiss. See ECF No. 108. Specifically, the Court
dismissed Baring's quantum meruit and unjust enrichment claims
but declined to dismiss Baring's claims seeking foreclosure on
the Lien and judgment on the Bond. At the hearing on the motion
to dismiss, Baring's counsel argued that Baring should be
allowed to take discovery into "the actual permanent
improvements to the [Property] and whether or not the
improvements that were provided or that [Baring] performed were
all permanent improvements . . . . But it's [Baring's] position
that they're all permanent improvements because everything was
provided and attached to the premises themselves." Id. at 13.

After the ruling on the motion to dismiss, 3 BP and
Westchester answered Baring's second amended complaint, and 3 BP
filed counterclaims against Baring for wrongful filing of the
Lien, willful exaggeration of the Lien, and injury to property.
See ECF No. 92. The case proceeded to discovery. Counsel for 3
BP and Westchester drafted and served discovery requests on
Baring, reviewed the materials that Baring produced, and sent at
least one deficiency letter to Baring's counsel. See ECF No.

4

180 ¶¶ 36-38, 43 ("Haddad Decl."). Counsel for 3 BP and Westchester also deposed several Baring witnesses in their individual and corporate capacities. Id. ¶¶ 40, 44-45.

The parties then cross-moved for summary judgment. In the Summary Judgment Order, the Court granted the motion for summary judgment by 3 BP and Westchester and denied Baring's motion for summary judgment. The Court concluded that the "undisputed facts establish that Baring's work on the [] Property did not result in any permanent improvements within the meaning of the New York Lien Law." 580 F. Supp. 3d at 49. Relying on documents created and produced by Baring and deposition testimony of Baring witnesses, the Court also found that "the undisputed evidence demonstrates that the work that Baring in fact performed relating to the [] Property comprised the delivery and installation of removable, non-permanent equipment." Id. Accordingly, the Court concluded that Baring exaggerated the value of the Lien by its entire amount. The Court also concluded that "Baring's exaggeration of the Lien was intentional and deliberate." Id. at 55.

Pursuant to Section 39-a, the Court awarded 3 BP damages equal to the value of the Lien, $320,356.94. Id. However, because the Court could not determine on the then-existing summary judgment record an amount of additional damages in excess of the value of the Lien, including for reasonable

5

attorney's fees and costs, the Court granted 3 BP leave to file the present motion. Id. at 57.

**B.**

3 BP now seeks $516,406.15: $28,192.00 for premiums paid relating to the Bond that discharged the Lien; $477,410.06 in attorney's fees; $3,045.09 in costs and expenses; and $7,759.00 for fees that 3 BP paid to Veritext, a court reporting service, in connection with the depositions of Baring witnesses. See Haddad Decl. ¶¶ 55, 67-69; ECF No. 193 ¶¶ 26-29 ("Haddad Reply Decl."). 3 BP submitted contemporaneous time records and invoices documenting the work 3 BP's counsel performed on this case. See ECF No. 180-1. 3 BP reviewed these time records and deducted fees for work unrelated to discharge of the Lien. The Court reviewed the time records including the in camera submissions that show the attorney-client privileged information redacted from the publicly-filed time records.

3 BP and Westchester were represented in this case by Sills Cummins & Gross P.C. ("Sills"). Haddad Decl. ¶ 1. Mitchell Haddad was lead counsel. Id. ¶ 59. Haddad, who has about 35 years of legal experience, is a Co-Chair of Sills's New York Real Estate Litigation practice. Id. ¶¶ 59-62. His hourly rate has ranged from $695 to $775 per hour. Id. ¶ 63.

Haddad was primarily assisted by Katherine M. Lieb, who is Of Counsel at Sills. Id. ¶ 64. Lieb, who has about 17 years of

experience in commercial litigation matters and real estate disputes, has a billing rate that ranged from $525 to $595 per hour in this matter. Id. Between April 2019 and 3 BP's filing of the present motion, Haddad billed over 460 hours to this matter, and Lieb billed over 350 hours to this matter.

These lawyers were assisted for specific tasks by one partner who charged from $710 to $750 per hour, one counsel who charged $525 per hour, three associates who charged from $255 to $425 per hour, two paralegals who charged $95 to $235 per hour, and two managing or assistant managing clerks who charged $265 to $275 per hour. Id. ¶ 65.

Sills afforded 3 BP a 15% discount on the hourly rates of the Sills attorneys and staff. Id. ¶ 66. 3 BP now seeks to recover only the discounted rates that it paid.

II.

This Court has jurisdiction over this case based on diversity of citizenship. "The awarding of attorneys' fees in diversity cases . . . is governed by state law." Grand Union Co. v. Cord Meyer Dev. Co., 761 F.2d 141, 147 (2d Cir. 1985). Accordingly, the Court applies New York law in resolving this motion.

The New York Lien Law provides that where a lienor seeking to enforce a mechanic's lien has willfully exaggerated the value of the lien, the lienor is liable for damages in the sum of:

> the amount of any premium for a bond given to obtain
> the discharge of the lien or the interest on any money
> deposited for the purpose of discharging the lien,
> reasonable attorney's fees for services in securing
> the discharge of the lien, and an amount equal to the
> difference by which the amount claimed to be due or to
> become due as stated in the notice of lien exceeded
> the amount actually due or to become due thereon.

N.Y. Lien Law § 39-a.

### III.

In 3 BP's opening brief, 3 BP sought $21,144.00 in costs that were paid as premiums for the Bond that discharged the Lien. See Haddad Decl. ¶ 69; ECF No. 180-5. In Baring's opposition brief, Baring did not oppose 3 BP's request for these costs. In 3 BP's reply brief, 3 BP sought an additional $7,048.00 attributable to a bond premium invoice dated after the opening brief was filed. Haddad Reply Decl. ¶ 2; ECF No. 193-2.

Under Section 39-a, 3 BP is plainly entitled to these costs, which represent "premium[s] for a bond given to obtain the discharge of the lien." New York Lien Law § 39-a. Moreover, Baring has not opposed any bond premium award. Accordingly, 3 BP is awarded $28,192.00 in bond premiums.[2]

### IV.

---

[2] Because the recent invoice for $7,048.00 was only included in 3 BP's reply, Baring has not had an opportunity to object specifically to that amount, although it has not contested that the bond premiums are a proper recoverable cost. Baring can lodge any specific objection, if any, to this amount within three days after the date of this Opinion. 3 BP may reply to any objection two days thereafter.

Section 39-a also entitles 3 BP to recover "reasonable attorney's fees for services in securing the discharge of the lien." Id. 3 BP seeks to recover $477,410.06 in attorney's fees that 3 BP contends it incurred as a result of Baring's filing a willfully exaggerated lien. Baring opposes 3 BP's application for attorney's fees. First, Baring argues that 3 BP's application is foreclosed by New York law on various grounds. Second, Baring contends that 3 BP's application should be denied, or the amount sought substantially reduced, on the ground that Sills billed 3 BP for excessive, redundant, and unnecessary work.

## A.

Baring argues initially that 3 BP's application improperly seeks fees relating to matters apart from the discharge of the Lien, including fees incurred in connection with obtaining dismissal of Baring's unjust enrichment and quantum meruit claims. Baring requests a hearing to determine which of Sills's fees were devoted exclusively to the discharge of the Lien.

Baring's argument is without merit. In many cases involving multiple claims, a "plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories," and "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Hensley v.

Eckerhart, 461 U.S. 424, 435 (1983). The Supreme Court has instructed that cases like these "cannot be viewed as a series of discrete claims," but that district courts instead "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.

Here, all of Baring's affirmative claims, including its claims for quantum meruit and unjust enrichment, as well as all of 3 BP's counterclaims against Baring, relate to the Property, the contractual relationship between 3 BP and DaDong, the nature of the goods that Baring provided to DaDong, and ultimately, the discharge of the Lien. 3 BP's counsel also appears to have meticulously reviewed its time records and has already deducted work from the fee application that concededly did not relate to the discharge of the Lien, such as work in connection with the DaDong bankruptcy. Because the claims for which BP seeks to recover attorney's fees "were based on a common core of facts and related legal theories," it is "unnecessary . . . to segregate fees claim by claim." J.S. Nicol, Inc. v. Peking Handicraft, Inc., No. 03-cv-1548, 2008 WL 4613752, at *6 (S.D.N.Y. Oct. 17, 2008). Further, no hearing is necessary because, by submitting an "affidavit of services, detailing the hours reasonably expended and the prevailing hourly rate for similar legal work in the community," 3 BP has given the court

enough "information upon which to make an informed assessment of
the reasonable value of the legal services rendered." D. Owens
Elec., Inc. v. J.W. Mays, Inc., No. 2014-80001, 2018 WL 6497020,
at *13 (N.Y. Sup. Ct. Oct. 30, 2018).

Baring also argues that Section 39-a forecloses 3 BP's
recovery of 3 BP's requested fee amount because a reasonable
attorney's fee should be limited to "a percentage of the amount
of willful exaggeration found." See ECF No. 188 ("Opp'n"), at 21
(citing Wang Jia v. Kang, 77 N.Y.S.3d 20 (App Div. 2018), and A
& E Plumbing, Inc. v. Budoff, 413 N.Y.S.2d 776 (App. Div.
1979)). But New York law imposes no such rule. Rather, New York
law simply requires that the prevailing party receive a
reasonable attorney's fee in relation to the willfully
exaggerated portion of the lien.[3] See, e.g., Daggart of Richmond
Inc. v. M & D Firedoor, 24 Misc.3d 1227(A), 897 N.Y.S.2d 669
(Table), 2009 WL 2264332, at *5 (N.Y. Sup. Ct. July 28, 2009)
(awarding $14,031.25 in attorney's fees under Section 39-a after
finding that the lien was exaggerated by $8,994.84); cf. also,

---

[3] In Kang, no attorney's fee was awarded because the claimant did
not establish the amount by which the lien was willfully
exaggerated. 77 N.Y.S.3d at 21-22. In A & E Plumbing, the court
found that, because the willful exaggeration of the lien was
only 5% of the total lien, the claimant was only entitled to 5%
of the total reasonable attorney's fees, in that case resulting
in an award of only $150. 413 N.Y.S.2d at 778. In this case, the
entire amount of the lien was willfully exaggerated and the
amount expended in recovering that amount was reasonable.

e.g., JK Two LLC v. Garber, 98 N.Y.S.3d 37, 39 (App. Div. 2019)
(upholding an award of attorney's fees for failure to return a
security even though the award exceeded the amount recovered).

Finally, Baring argues that the Court cannot rely on the
aspects of Haddad's declaration describing the qualifications of
other attorneys and staff at Sills. See Haddad Decl. ¶¶ 64-65.
Baring contends that Haddad's recitation of the qualifications
of these individuals is "hearsay" and that the Court should
require affidavits from each of these individuals before
awarding any fees that they billed. See Opp'n at 14-15. This
argument is frivolous and unsupported by any authority. It would
be extraordinary to require individual affidavits from every
timekeeper in a complicated case. Haddad attested that he has
"direct" and "personal" knowledge of the facts set forth in his
declaration, see Haddad Decl. ¶ 2, and Baring failed to explain
how Haddad's recitation of the qualifications of these
individuals, based on his own knowledge and experience as the
lead attorney on this case and the Co-Chair of the Real Estate
Litigation practice at Sills, is inadmissible hearsay or
otherwise unreliable. The fee application is supported by the
contemporaneous time records of the Sills firm. Although New
York law does not require counsel to track time
contemporaneously for a court to award fees, and courts applying
New York law "may award attorneys' fees on the basis of either

reconstructed or contemporaneous time records," Mt. Airy Ins.
Co. v. Town of Orangetown, 22 F. Supp. 2d 57, 59 (S.D.N.Y.
1998); see also Riordan v. Nationwide Mut. Fire Ins. Co., 977
F.2d 47, 53 (2d Cir. 1992), in this case Sills's contemporaneous
time records easily substantiate 3 BP's request for attorney's
fees.

Therefore, 3 BP may recover fees relating to all hours
reasonably expended in this litigation.

**B.**

Baring next argues that Sills's fees were unreasonable,
excessive, and exaggerated.

Courts applying New York law "have broad discretion in
determining what constitutes reasonable compensation for legal
services." Sire Spirits, LLC v. Green, No. 21-cv-7343, 2022 WL
2003483, at *8 (S.D.N.Y. June 6, 2022). "In exercising this
discretion, the court may consider a number of factors including
the time spent, the difficulties involved in the matters in
which the services were rendered, the nature of the services,
the amount involved, the professional standing of the counsel,
and the results obtained." Id. "At bottom, a reasonable
attorneys' fee is generally the hourly rate that the market
would pay multiplied by a reasonable number of hours." Id.

In this case, the amount of attorney's fees sought is
wholly reasonable particularly given the ways in which Baring

13

prolonged the litigation by pursuing arguments that it knew or should have known were completely without merit and pursuing unnecessary discovery. The amount of time spent on the litigation by the attorneys involved was wholly reasonable. The time records recount in detail the work that was expended. The time entries reflect record-keeping in increments of tenths of an hour and avoid "block-billing" without detail. The amount of the time expended is explicable given the complexity of the proceedings and the fact that the time period involved in the billing stretched over about two and a half years.

It is significant that Baring unnecessarily complicated and prolonged this case. In Baring's second amended complaint, Baring alleged that its work resulted in permanent improvements to the Property. See ECF No. 64 ¶¶ 37-38. At the hearing on the motion to dismiss filed by 3 BP and Westchester, Baring's counsel argued that Baring should be allowed "to take discovery" into "the actual permanent improvements to the property and whether or not the improvements that were provided or that [Baring] performed were all permanent improvements." ECF No. 108, at 13. At the hearing, Baring took the "position that they're all permanent improvements because everything was provided and attached to the premises themselves." Id. The Court denied the motion to dismiss Baring's claims relating to the Lien, reasoning that "whether the unpaid money allegedly owed to

14

[Baring] was for work done for permanent improvements, within
the meaning of the Lien Law and the lease agreement or, instead,
for property that would be removable by [DaDong] at the end of
the Lease, could not be decided on" the motion to dismiss. Id.
at 31-32.

Once discovery closed and motions for summary judgment were
fully briefed, it became clear not only that Baring's work did
not result in any permanent improvements to the Property, but
that Baring knew or should have known this from the beginning of
this litigation. In concluding that Baring's work did not result
in any permanent improvements, the Court relied almost
exclusively on documents that Baring created or had in its
possession before it took discovery in this litigation, such as
Baring's Lien Law § 38 response and testimony from Baring's own
witnesses. See Summary Judgment Order, 580 F. Supp. 3d at 49-51.
And in attempting to defeat the motion for summary judgment by 3
BP and Westchester, Baring relied on declarations that contained
impermissible legal conclusions, discussions of matters about
which the declarants had no personal knowledge, and assertions
that contradicted those witnesses' earlier deposition testimony.
See id. at 50 n.2, 54 n.7.[4] In short, Baring's positions during

---

[4] Baring also conducted discovery in a manner that unnecessarily
increased 3 BP's litigation costs. See, e.g., Summary Judgment
Order, 580 F. Supp. 3d at 52-53 (explaining that "Baring plainly

this litigation caused 3 BP to incur otherwise unnecessary litigation expenses, and any assessment of the number of hours billed by Sills must be conducted with reference to Baring's conduct. See JK Two, 98 N.Y.S.3d at 38 ("[T]he determination of reasonable attorneys' fees can take into account whether a party has engaged in conduct or taken positions resulting in delay or unnecessary litigation.").

    3 BP is entitled to the entire sum of the attorney's fees it seeks. First, the time 3 BP's counsel spent on this litigation was reasonable. The Sills attorneys performed appropriate and necessary work considering Baring's claims and the substantial damages sought, generally defended the action in a manner that was reasonable, and obtained a successful result. They obtained not only dismissal of Baring's affirmative claims but also summary judgment on 3 BP's counterclaim that Baring willfully exaggerated the entire Lien amount. Moreover, Sills is only seeking to recover fees directly related to the lien litigation. It has excluded the fees incurred in connection with either the summary holdover proceeding against DaDong or its separate action brought to recover against DaDong's guarantors. Haddad Decl. ¶ 58. 3 BP is also not seeking to recover fees or costs in connection with DaDong's bankruptcy proceeding. Id.

---

failed to meet its Rule 26 discovery obligations" with respect to three untimely produced change orders); Haddad Decl. ¶ 38.

Faced with the detailed time records, Baring has quibbled with various items. Baring objects to 6.6 hours – amounting to $4,341.00 in fees – which Sills attorneys spent reviewing a two-page letter sent by Baring's attorneys and drafting and filing a two-page letter in response, and to 18.8 hours – amounting to $13,262.50 – which Sills attorneys used to prepare an Answer with Counterclaims for 3 BP and Westchester. But preparing and responding to legal documents appropriately entails legal research and careful drafting. More generally, Baring objects to the fact that Haddad and Lieb, Sills's two principal attorneys on the case, together billed almost three times the number of hours that all four of Baring's attorneys together tallied. Baring invites the Court to find that "the total hours that [Sills] billed is unreasonable especially compared with the similar services performed by" Baring's counsel. Opp'n at 15-16.

This is a false comparison for which Baring offers no support. Baring took positions that were without merit and the time it took to develop them should not be a measure of the time needed to assert well-founded legal arguments against them. The "critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Miroglio S.P.A. v. Conway Stores, Inc., 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009). In this case, the time spent by Sills's attorneys on this litigation was reasonable.

17

The hourly rates for the Sills attorneys were also
reasonable. The reasonable hourly rate is that which "a
reasonable, paying client would be willing to pay, given that
such a party wishes to spend the minimum necessary to litigate
the case effectively." Simmons v. N.Y.C. Transit Auth., 575 F.3d
170, 174 (2d Cir. 2009). This rate should be "in line with those
prevailing in the community for similar services by lawyers of
reasonable comparable skill, experience and reputation."
Sugarman v. Vill. of Chester, 213 F. Supp. 2d 304, 309 (S.D.N.Y.
2002). "The relevant community to which the court should look is
the district in which the case was brought." Rosado v. City of
New York, No. 11-cv-4285, 2012 WL 955510, at *4 (S.D.N.Y. Mar.
15, 2012).

Baring does not object to Sills's rates. In any event, the
rates were reasonable and sufficiently documented. As an initial
matter, 3 BP affirmed that because Sills's main office is in
Newark, New Jersey, the law firm's "rates are set primarily
based on the New Jersey legal market, which generally are lower
than those of New York City law firms." Haddad Decl. ¶ 66.
Further, the rates that Sills's senior attorneys billed in this
case – notably, $590.75 to $658.75 per hour for Haddad at the
discounted rate and $446.25 to $505.75 per hour for Lieb at the
discounted rate – are well within the hourly rates allowed in

this district.[5] The rest of Sills's rates – $250.75 to $361.25 per hour for the associates at the discounted rate, and $80.75 to $233.75 per hour for the managing clerks and paralegals at the discounted rate – are also within the hourly rates allowed in this district.[6]

Therefore, the Court awards 3 BP $477,410.06, the full amount of 3 BP's reasonable attorney's fees.

## V.

Finally, 3 BP seeks to recover $3,045.09 in costs and expenses that 3 BP represents were "primarily incurred in connection with court reporting services, electronic research, Pacer, photocopying expenses, parking, court fees and postage

---

[5] See, e.g., Inter-Am. Dev. Bank v. Venti S.A., No. 15-cv-4063, 2016 WL 642381, at *7 (S.D.N.Y. Feb. 17, 2016) (finding that rates of $380/hour to $795/hour for partners with 10-40 years of experience and rates of $675/hour for counsel with 10 years of experience were reasonable fees for complex litigation); KGK Jewelry LLC v. ESDNetwork, No. 11-cv-9236, 2015 WL 2129703, at *2 (S.D.N.Y. May 6, 2015) ($675/hour for partner with over 30 years' experience and $437/hour for an associate with seven years' experience); United States ex rel. Fox Rx, Inc. v. Omnicare, Inc., No. 12-cv-275, 2015 WL 1726474, at *2 (S.D.N.Y. Apr. 15, 2015) ("$836/hour for a litigation partner; $631.75/hour for an eighth-year associate; and $541.50/hour for a fourth-year associate"); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 545-46 (S.D.N.Y. 2008) ($600/hour for partners with more than 30 years' experience, and $350/hour for senior associates with seven years' experience).

[6] See, e.g., Doe v. Unum Life Ins. Co. of Am., No. 12-cv-9327, 2016 WL 335867, at *6 (S.D.N.Y. Jan. 28, 2016) (approving $200 hourly rate for senior paralegals); Serin v. N. Leasing Sys., Inc., No. 06-cv-1625, 2011 WL 1467560, at *11-12 (S.D.N.Y. Apr. 19, 2011) ($325/hour for associates at mid-sized Manhattan firms).

and courier fees." Haddad Decl. ¶ 67. 3 BP seeks an additional $7,759.00 for costs paid to Veritext for court reporting services in connection with the depositions of Baring's witnesses. Id. ¶¶ 68, 70.

Section 39-a does not specifically provide for an award of costs other than those incurred in connection with discharging a lien. However, courts interpreting other New York statutes that provide for "reasonable attorney's fees" have reasoned that such an award may include "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." See, e.g., Orser v. Wholesale Fuel Distribs.-CT, LLC, No. 2014-0835, 65 Misc. 3d 449, 452, 460-61 (N.Y. Sup. Ct. Apr. 12, 2018) (New York Labor Law art. 6). 3 BP submitted records and invoices documenting its costs. The costs are reasonable in view of the complexity and length of this litigation, and Baring did not oppose an award of any of the costs that 3 BP seeks to recover.[7] Therefore, the Court awards 3 BP $10,804.09 in costs.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not discussed above, the arguments are either moot or without merit. 3 BP's supplemental motion for summary judgment

---

[7] Baring did object to a $210 "court filing" fee. See ECF No. 187 ¶ 88. But 3 BP has not sought to recover this fee. See ECF No. 180-1 at 16.

is **granted**. 3 BP should submit a proposed judgment within fourteen days of the date of this Memorandum Opinion and Order. Baring may submit any objections three days thereafter. The Clerk is directed to close all pending motions.

**SO ORDERED.**

Dated:     New York, New York
           September 29 , 2022

                                    _____
                                         John G. Koeltl
                                 United States District Judge